UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARISSA L.,  :
    Plaintiff,  :
                                                  :
    v.  :        C.A. No. 24-323MRD
                                                  :
FRANK BISIGNANO,  :
Commissioner of the Social Security  :
Administration,  :
    Defendant.  :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Plaintiff Marissa L. is a "younger" individual who has an associate's degree and a very superior verbal comprehension IQ score. Tr. 31, 219, 612, 625. Until July 2018, she had worked for ten years at Lowe's, most recently as a department manager, and was training to be a phlebotomist; she also suffers from substance use disorder, principally involving the abuse of alcohol. Tr. 58, 175, 612, 625, 732. On October 28, 2020, then aged thirty years old, Plaintiff filed her second set of applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Tr. 210. Alleging onset as of July 20, 2018, Plaintiff claimed to be disabled based on Tourette's syndrome, chronic pain, arthritis, anxiety, obsessive compulsive disorder ("OCD") and attention deficit hyperactivity disorder ("ADHD"). Tr. 28. Now pending before the Court is Plaintiff's motion to remand based on what she contends are errors committed by the administrative law judge ("ALJ"). ECF No. 10. Also pending is the Commissioner's counter motion asking the Court to affirm the ALJ's decision. ECF No. 13. The parties' motions have been referred to me for report and recommendation. See 28 U.S.C. § 636(b)(1)(B).

**I.    Background**

A.      **Procedural Travel**

Filed in November 2019, Plaintiff's first set of applications also alleged onset of disability as of July 2018. Tr. 133. They were based on Tourette's, chronic pain, seizures, migraines, cognitive issues, anxiety and OCD. Id. These applications were denied in June 2020 at the reconsideration phase after Plaintiff was found by four non-examining experts to have several severe but not disabling mental impairments (anxiety/OCD, substance use disorder (alcohol), depression, ADHD and Tourette's). See Tr. 149-66. Because Plaintiff was found to be not disabled despite documented substance abuse, an analysis of the materiality of her substance use was not performed. Tr. 139, 146, 157, 166. Notably, these experts considered Plaintiff's claim that she suffered from severe migraines, that they were treated with medication ("[n]ortriptyline chronically . . . and [as needed] Maxalt") and that Plaintiff did not complain of headache symptoms during medical visits; they found that migraine was a medically determinable impairment that was non-severe. Tr. 135, 142, 152, 161.

Filed four months after the prior applications were denied, Plaintiff's pending applications allege substantially the same impairments, except that she omitted the allegation that she suffers from headache/migraine that impact her ability to work. That is, still alleging onset in July 2018, the current set of applications claim disability based on Tourette's syndrome, chronic pain, arthritis, anxiety, OCD and ADHD. Tr. 169, 178. Despite Plaintiff's failure to list headache/migraine on application, the non-examining physician experts for the current application noted and considered the references to headache/migraines in the record. See Tr. 169-86, 189-206. Based on their analyses, these physicians made the unchallenged expert findings that Plaintiff's

2

headache/migraines are non-severe, as well as the specific finding that neither headache/migraines nor Plaintiff's other non-severe medical impairments cause functional impact to be incorporated into an RFC[1] ("no significant medical impairment that would justify an[] RFC")  Tr. 171-72; see Tr. 180-81, 191, 200.

      The ALJ received and considered these prior administrative findings from the two non-examining physicians, as well as those from two non-examining psychologists (and those from the physician experts who performed the reconsideration phase file review of the prior applications).  He also reviewed the massive (3,538 pages) record.  Following a hearing held on November 19, 2021, the ALJ issued his decision finding that the non-examining experts' findings were persuasive.  Tr. 210; see Tr. 213, 215, 221-22.  In reliance on these experts and the other substantial evidence of record, the ALJ found that Plaintiff is limited by severe medically determinable mental impairments ("MDI").[2]  Tr. 213.  Regarding migraines, the ALJ relied on his review of the record and the persuasive findings of the non-examining expert physicians to find at Step Two that Plaintiff's migraines were a chronic MDI managed by medications and intermittent monitoring that did not significantly limit her ability to perform basic work, terminating consideration of them.  Tr. 213.  At Step Three, the ALJ found that, with Plaintiff's substance use included, she met the criteria for disability based on a listing, but that she would not meet the criteria if she stopped the substance abuse.  Tr. 214-18.  At Step Three, and for the RFC, the ALJ found that without substance use Plaintiff was moderately limited in specific ways, but that she can attend and sustain pace sufficient to perform simple work at a normal

---

[1] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] These are: depressive disorder, anxiety disorder, OCD, ADHD, Tourette's syndrome, substance use disorder and alcohol-induced withdrawal seizures.  Tr. 213.

schedule. Tr. 218-22. As substantial evidence to support this finding, the ALJ noted *inter alia* the unchallenged non-examining expert opinions. Tr. 216-23 (citing, e.g., Tr. 155 "she can maintain effort for two hour periods over the course of an eight hour day and standard work week within acceptable pace and persistence standards").

On December 22, 2022, the Appeals Council remanded the case back to the ALJ because he had not presented the specific limitations found in the decision to the vocational expert ("VE"). Tr. 234-35. On remand, the ALJ was instructed to consider Plaintiff's maximum RFC during the entire period and to pose a hypothetical to a VE that incorporates all limits. Tr. 235. The ALJ complied, holding a new hearing with a new VE. Tr. 17-18, 42. During the hearing, Plaintiff advised that she had returned to work and that her applications are now limited to a closed period: July 20, 2018, until July 1, 2022. Tr. 49-50. In the second decision (which is the one under this Court's review), the ALJ found substantially the same severe MDIs and made the same Step-Two findings regarding migraines in reliance on the record and on the "generally persuasive" findings of the four non-examining expert physicians who opined for the prior and current applications. Tr. 21-23. Considering all the expert findings, the testimony of the VE and the balance of the record, the ALJ again found that, with substance use, Plaintiff is disabled, but without substance use, she retained the RFC (this time with detailed findings regarding mental limitations as required by the Appeals Council's remand order) to perform work. Tr. 30-32. The ALJ's decision (at both Step Two and for the RFC) also relies on the lack of any opinions from any treating source supporting a more limited RFC. Tr. 23, 30.

Plaintiff's pending motion (ECF No. 10) challenges two aspects of the ALJ's decision. First, citing only to a limited set of medical records (Tr. 27-29, 735), which reflect a very severe headache of "unclear etiology," Tr. 735, that plagued Plaintiff for several days during a detoxification hospitalization following a significant alcohol withdrawal seizure, and alleging (without support) that "there is evidence throughout the record of [Plaintiff's] headaches," as well as (with no support) that these ongoing migraines cause specific functional limitations such as the need to avoid light, noise and vibration. ECF No. 10 at 7-10. Plaintiff contends that the ALJ erred by completely overlooking the migraine diagnosis and failing to include these functional limits in the RFC. Id. Relatedly, she contends that the ALJ also erred by not proceeding to Step Three to consider whether Plaintiff's headache/migraine symptoms are medically equivalent to disabling epilepsy as described in Listing 11.02. Id. at 4-7.

Second, in reliance on an argument based on two unreported Ninth Circuit cases, Plaintiff contends that the ALJ erred in accepting that, without substance abuse, Plaintiff is moderately limited in the functional sphere of concentration/attention/persistence and in failing to include additional findings that the two Ninth Circuit cases require. Id. at 8-9. That is, Plaintiff contends that the moderate limitations found "required" the ALJ either to include in the RFC specific limits impacting the "ordinary routine" or to explain why such limits were not included by articulating a "logical bridge" from the moderate findings to the RFC. Id. at 9-11.

B. **Factual Background**

As described in her memorandum of law, Plaintiff's primary argument relates to headache/migraine but rests on a single set of cited pages (Tr. 727-29, 735) that appear to be the only record reference to serious headache symptoms. These pages appear in the October 2018 hospitalization records for alcohol detoxification. Id. They reflect that Plaintiff was first

5

hospitalized at Kent Hospital following a "bender for the past 3 months," Tr. 712, was transferred to Butler Hospital, but her withdrawal symptoms were too extreme (including a very severe seizure) and was transferred again to Miriam Hospital. Tr. 708, 712. With extremely severe and dangerous alcohol withdrawal symptoms, including ongoing seizures, vomiting and nausea, Plaintiff also experienced a severe headache with photophobia early in this hospitalization, although multiple CTs and MRIs yielded no findings. Tr. 721-22, 727. By the third day in the hospital, the record reflects that photophobia and blurred vision were gone but the headache pain persisted, albeit intermittent, "much less than yesterday." Tr. 723. Diagnostically, providers noted "[h]eadache . . . unclear etiology" and prophylactically prescribed migraine medication, with a prescription for nortriptyline at discharge. Tr. 735-36.

After this isolated episode, Plaintiff continued to take nortriptyline (as the non-examining experts and the ALJ noted) and, for a while, subsequent Lifespan records list headache as a condition that had been diagnosed, although there is no reference to any complaint of ongoing headache or migraine symptoms. E.g., Tr. 641-43, 662-64. In a December 2019 primary care treatment note, written when the nortriptyline prescription was up for renewal, the physician noted "[history] of migraine on daily nortriptyline," Tr. 828, but mentions no ongoing symptoms. E.g., Tr. 828-31 (listing diagnosis as "[n]onintractable headache, unspecified chronicity pattern, unspecified headache type" and continuing same prescription for nortriptyline). In other primary care records, headache is entirely omitted from the diagnosis list. E.g., 852, 857, 879, 3298-99. In references that appear in the context of some of the subsequent overdose/detoxification episodes, the complaint of headache is mentioned. E.g., Tr. 936 (during March 2020

6

hospitalization for drug overdose, Plaintiff mentions headache); Tr. 1135 (during September 2020 hospital encounter for alcohol detoxification, Plaintiff mentions headache); Tr. 1262 (in August 2020, Plaintiff offered Tylenol for headache during alcohol withdrawal). During other detoxication episodes, headaches are not mentioned. E.g., Tr. 918-19, 1041, 1875, 3332-36, 3448-53. In January 2021, Plaintiff was treated for a fever, nasal congestion, and cough, non-recurrent sinusitis was diagnosed and an antibiotic was prescribed; this record has a passing reference to a headache but there is no treatment for it. Tr. 1806-07, 1811. At the time of this encounter, nortriptyline was still listed as a current medication, although it does not appear on the list of medications Plaintiff reported that she was taking. Tr. 1809-16. At some point, nortriptyline was discontinued; the more recent records, including those continuing past the closed period in issue, do not mention headache at all. E.g., 3411-61, 3462-83.

Plaintiff's subjective statements in support of her application entirely omit headache/migraine, or any symptoms associated with them. Thus, in her function reports, submitted in 2019 and 2020 in support of her application, Plaintiff refers to other symptoms that she links to the serious alcohol withdrawal seizure she had in October 2018, but makes no reference to headaches or migraine. Tr. 504-11, 546-53. Similarly, neither Plaintiff nor her attorney mentioned headache or migraine or any symptoms caused by headache/migraine during either the first or second ALJ hearing. Tr. 42-85, 88-130.

No treating sources has opined either that Plaintiff is limited in any way by the symptoms caused by headache/migraine, or that Plaintiff is not able to sustain a routine daily work schedule.

**II.     Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2020) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his

8

designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  If the Court concludes that the ALJ erred, it is empowered to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).

### III.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.605.[3]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

#### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or

---

[3] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

9

combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

    **B.**    **Absenteeism and Off-Task Time**

When the symptoms of an impairment or a combination of different impairments, or the medically necessary treatment required by the impairments, would cause the claimant periodically to be off-task or unable to attend work, it is reversible error if the ALJ fails specifically to assess the issue of absenteeism. Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *1, *5-6 (D.R.I. Jan. 24, 2023) (remand required because non-examining experts and ALJ ignored cumulative impact of absenteeism undisputedly resulting from kidney stone disorder requiring hospitalization several times each year, rhinosinusitis requiring repeated surgeries, confirmed diagnoses of fibromyalgia and carpal tunnel syndrome, migraines that recurred despite improvement with medical treatment, as well as other disorders), adopted by text order (D.R.I. Mar. 7,

2023). Remand is similarly required if the ALJ relies on the findings of non-examining physician experts who did not address absenteeism because, for example, they did not see records establishing the sheer scope of claimant's many medical concerns. Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *4-6 (D.R.I. Feb. 22, 2022) (non-examining experts "did not have access to a sufficiently developed record to permit them even to consider how the total number of medical appointments and hospitalizations would impact work attendance"), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022).

## IV.     Analysis and Recommendation

### A.     Headache/Migraine

Plaintiff's challenge to the ALJ's Step-Two headache/migraine finding is without merit. For starters, Plaintiff is simply wrong to suggest that the ALJ erred because, "in his decision, [he] did not perform a headache analysis." ECF No. 10 at 7. To the contrary, the ALJ specifically addressed this impairment, referencing substantial evidence establishing that it causes no more than minimal limitations. Tr. 22-23. Also dispositive is the ALJ's appropriate reliance on the unchallenged persuasive findings of the four physician experts who considered this impairment and found it to be an MDI that causes no limiting symptoms, specifically finding that no RFC limits were required to accommodate it. Tr. 23. Thus, I find no error in the ALJ's approach and certainly no error either in the ALJ's termination of this analysis at Step Two or in the ALJ's failure to include headache/migraine limitations in the RFC. Further, the Court's own review of the evidence of record confirms that there is ample evidence that a reasonable mind would accept as adequate to support the ALJ's conclusion, particularly where Plaintiff herself omitted headache/migraine symptoms from her application, her function reports and her hearing testimony and where the only record reflecting a severe headache/migraine symptoms (extreme

pain, photophobia and blurred vision) is from the October 2018 alcohol withdrawal hospitalization, while other references to headache are in passing and appear exclusively in the detoxification/overdose context or (once) in connection with a non-recurrent sinus infection.

Because Plaintiff has presented the argument, I pause to address her contention that the ALJ should have performed a Step-Three equivalency analysis of her headache/migraine in light of Listing 11.02.[4]  This argument borders on frivolous.[5]  It appears to be based on the premise that, because what is established to be an extremely severe migraine impairment may be equivalent to an intractable seizure disorder,[6] this ALJ should have performed a Listing 11.02 analysis of a migraine that the ALJ, supported by findings of four non-examining experts, had appropriately found to be non-severe with no work-limiting symptoms to be included in the RFC.  Thus, as in William S. v. O'Malley, I find that Plaintiff's argument that the ALJ erred by failing to consider whether her headaches met Listing 11.02 is both unsupported and unpersuasive.  C.A. No. 24-00143-LDA, 2024 WL 4123488, at *6-7 (D.R.I. Sept. 9, 2024).  Further, as was argued in William S., Plaintiff alleges that "there is evidence throughout the record of [her] headaches," yet, as in that case, Plaintiff has failed to provide citations to the record supporting this broad proposition.  See id. at *7.  And, as in William S., Plaintiff did not

---

[4] Listing 11.02 is met by evidence of generalized tonic-clonic seizures or dyscognitive seizures that persist despite treatment compliance at a specified level of severity and for a specified period of time.  Kane C. v. Kijakazi, C.A. No. 20-381MSM, 2022 WL 168043, at *3 n.5 (D.R.I. Jan. 19, 2022), adopted by sealed  text order (D.R.I. Feb. 4, 2022).

[5] The Court speculates that Plaintiff's Step Three argument conceivably was meant to focus on the severe seizure that providers medically linked not to a migraine disorder but to alcohol withdrawal during the October 2018 episode.  If so, the argument is rejected as undeveloped.

[6] The Court expresses no view, one way or the other, whether this premise is accurate.  The point is that it is not applicable when the substantial evidence establishes that the headache/migraine in issue in this case was a non-severe MDI.

12

even identify headaches as a relevant impairment either on application or in the ALJ's two hearings. See id. The Court notes that Plaintiff's contention that any mention of headaches in the treating record triggers a Listing 11.02 analysis has also been soundly rejected in the District of Massachusetts. See Allison M. v. Kijakazi, Civil Action No. 22-cv-10033-FDS, 2023 WL 5650100, at *7-10 (D. Mass. Aug. 31, 2023); Tammy M. v. Kijakazi, Civil Action No. 22-cv-10949-FDS, 2023 WL 5353337, at *7 & n.3 (D. Mass. Aug. 21, 2023); Monteiro v. Saul, Civil Action No. 1:20-cv-12189-RWZ, 2022 WL 867988, at *5-6 (D. Mass. Mar. 23, 2022).

I recommend that the Court reject in its entirety Plaintiff's headache/migraine argument.

### B. RFC Impact of Moderate Limitations

Plaintiff's second argument is principally based on two not-for-publication decisions from the Ninth Circuit, Morinskey v. Astrue, 458 F. App'x 640, 641 (9th Cir. 2011), and Bain v. Astrue, 319 F. App'x 543, 545-46 (9th Cir. 2009). Morinskey and Bain were decided in the period prior to the 2017 amendment of the rules that guides the analysis of opinion evidence. See 20 C.F.R. § 416.920c. Neither has been cited as persuasive outside of the Ninth Circuit. Plaintiff contends that these cases somehow required the ALJ to do more to build a "logical bridge" from Plaintiff's "moderate" concentration/persistence/pace/adaptation limits to the RFC. Plaintiff deploys this argument despite what the Court finds to be a well-supported "logical bridge" between Plaintiff's RFC limitations[7] as reflected in the experts' findings and the ALJ's detailed RFC finding:

---

[7] To the extent that Plaintiff is asking the Court to remand based on the absence of a link between the moderate paragraph B criteria findings and the RFC, the argument should be rejected because paragraph B limitations "are not an RFC assessment but are used [only] to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Thomas L. v. O'Malley, C.A. No. 24-00195-WES, 2024 WL 4948805, at *7 (D.R.I. Dec. 3, 2024) (quoting SSR 96-8p, 1996 WL 374184, at *4), adopted by text order (D.R.I. Jan. 27, 2025). Moderate B criteria limitations do not translate into any specific RFC restriction or require a finding of disability. See Cheyenne R. v. Kijakazi, No. 21-473WES, 2022 WL 18910866, at *9 (D.R.I. Sept. 23, 2022) (collecting cases finding "'moderate' mental limitations are not *per se* work preclusive"), adopted by text order (D.R.I. Oct. 25, 2022); see also Dias v. Colvin, 52 F. Supp. 3d 270, 285 (D. Mass. 2014) ("[T]he paragraph B criteria, however, does not

13

> [I]f the claimant stopped the substance use, the claimant has the residual functional capacity to . . . perform simple, routine, and repetitive tasks, in a work environment involving only simple work-related decisions and only occasional changes in work setting . . . [with no] production rate or pace work (i.e., assembly line type work done in close tandem with co-employees at an outwardly set pace) but could do individual table or bench work. She can interact occasionally with the general public.

Tr. 28. Thus, the ALJ's nuanced RFC is derived directly from the narrative explanations of the non-examining experts, who specifically opined that Plaintiff retained the RFC to carry out simple tasks and simple instructions based on stable work assignments over the course of a normal 8/5/40 work routine. Without specifying what more is needed, Plaintiff nevertheless asks the Court to remand in reliance on these Ninth Circuit cases. The argument has recently been rejected by this Court. See Christine L. v. Colvin, C.A. No. 24-00145-LDA, 2024 WL 5118440, at *7-8 (D.R.I. Dec. 16, 2024); Thomas L. v. O'Malley, C.A. No. 24-00195-WES, 2024 WL 4948805, at *8 (D.R.I. Dec. 3, 2024), adopted by text order (D.R.I. Jan. 27, 2025). I agree with these authorities and find that nothing more is required in this case.

Relatedly, Plaintiff contends that, having found moderate limits in certain functional areas, the ALJ failed adequately to consider whether Plaintiff would be off-task or absent at a work preclusive level in the absence of substance abuse. I reject this argument based on the experts' finding that Plaintiff could sustain a normal work schedule, which "necessarily means that materially excessive off-task time and absenteeism were both considered and not found." Austin B. v. O'Malley, C.A. No. 23-519-PAS, 2024 WL 3329754, at *3 (D.R.I. July 8, 2024); see Heather D. v. Kijakazi, C.A. No. 23-122-LDA, 2023 WL 7385107, at *7 (D.R.I. Nov. 8, 2023). Particularly with no expert or treating source recommending additional concentration/persistence

---

necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.") (internal quotation marks omitted) (alteration in original).

14

limitations or opining to absenteeism or off-task time, as the ALJ noted, I find that the non-examining expert findings of these psychologists provide substantial support (coupled with the other substantial evidence adverted to by the ALJ, including Plaintiff's activities) for the ALJ's finding that, without substance use, Plaintiff could attend and perform simple tasks without excessive time off-task or absence.

I recommend that that Court affirm the ALJ's determination.

**V.     Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED[8] and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 26, 2025

---

[8] The Court notes that Plaintiff's motion (though not her memorandum) appears to ask in the alternative for remand for an award of benefits.  Courts generally exercise the power to award benefits only when it is clear from the record that the claimant is entitled to benefits.  Sacilowski, 959 F.3d at 437.  Such a finding must be based on the reality that remand for further proceedings is unnecessary because the evidence of disability is "overwhelming" and there is no contrary evidence to rebut it.  Audrey P. v. Saul, C.A. No. 20-92MSM, 2021 WL 76751, at *13 (D.R.I. Jan. 8, 2021), adopted, 2021 WL 309233 (D.R.I. Jan. 29, 2021).  This case is not one where an award of benefits conceivably would be appropriate.  To the extent that Plaintiff may be deemed to seek such a remedy, I recommend that it should also be denied.